IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Robert Holland Koon,<br><br>     Petitioner,<br><br>  vs.<br><br>Colie Rushton, Warden; Henry D.<br>McMaster, Attorney General<br>of South Carolina,<br><br>     Respondents. | Civil Action No. 8:05-2523-RBH-BHH<br><br>**<u>REPORT OF MAGISTRATE JUDGE</u>** |

The petitioner, Robert Holland Koon, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254. The respondents have filed a return and motion for summary judgment, and various supplements thereto, seeking dismissal of the petition.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this Magistrate Judge is authorized to review post trial petitions for relief and submit findings and recommendations to the District Court.

The petitioner brought this habeas action on September 29, 2005. On February 21, 2006, the respondents moved for summary judgment. By order filed February 22, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On February 28, 2006, the petitioner filed a response. On March 8, 2006, the respondents filed a supplemental memorandum in support of

summary judgment concerning grounds 4 through 9.   Thereafter, the petitioner filed his supplemental response on March 14, 2006.

On August 25, 2006, the undersigned recommended dismissal of the petition because it included both exhausted and unexhausted claims.  The district court rejected that recommendation and recommitted the case for further consideration.  Thereafter, the petitioner filed a notice of interlocutory appeal.  Consideration of the present motion for summary judgment was stayed during the pendency of that appeal.

The Fourth Circuit Court of Appeals dismissed the appeal on July 13, 2007. Thereafter, the Court requested that the parties supplement their briefing concerning the petitioner's claim based on *Faretta v. California*, 422 U.S. 806 (1975) and that the respondents submit the full transcript of a October 24, 2006 Post-Conviction Relief ("PCR") hearing.  The parties have filed various other supplements to their briefing at various times. The motion is now ripe for consideration.

## **BACKGROUND**

The petitioner was indicted at the March 1997 term of the Cherokee County Grand Jury for grand larceny and indicted at the May 1998 term of the Cherokee County Grand Jury for second degree burglary.  A jury trial was held on May 29, 1998, and the petitioner was found guilty as charged.  He was sentenced by the Honorable John C. Hayes to confinement for life without parole for second degree burglary and five years, consecutive, for grand larceny. (Tr. at 1-578, 579-614 (transcript of Blair hearing).)  Mitchell Slade, Esquire, represented the petitioner at trial.

At trial the evidence showed that sometime during the night of January 31-February 1, 1997, the Gaffney office of the Cherokee County Department of Probation, Pardon, and Parole Services ("the Department") was burglarized.  (Tr. at 175-79.)  Several offices were ransacked.  *Id*.  Various items were stolen from the offices: money, badges, a cellular

2

telephone, walkie-talkies, two-way radios, and a .357 revolver.  (Tr. at 175, 179, 183, 186, 193, 199, 200, 202, 229, 230, 238, 239, 244, 260, 262.)

During the evening of February 11 the police were summoned to the residence of Jerry Sutherland.  (Tr. 336-37.)  Earlier that day, the petitioner had allegedly shown Sutherland a "hot" gun.  (Tr. at 337-39.)  The petitioner allegedly returned to Sutherland's that evening and was banging on the door.  (Tr. at 169, 339.)  By the time the police had arrived, the petitioner had managed to get inside the home.  (Tr. at 169.)  He ran to the back bedroom.  *Id*.  When the police found the petitioner, he was hiding under the bed. (Tr. at 170.)  The police found the gun, which had been stolen from the Department, under the same side of the bed where the petitioner had been hiding.  (Tr. at 170-71, 173, 174, 260, 261, 336, 342.)  The petitioner claimed that he had been given the gun at a pool hall and that he later drove to Sutherland's home, where Sutherland purchased it.  (Tr. at 422-26.)

Koon's fingerprints were also lifted from a ledger card in one of the probation offices where the burglary had occurred.  (Tr. at 236, 270, 272, 305-07, 312, 332-33.)  The prosecution claimed that Koon would otherwise have had no access to such a ledger card. The petitioner testified that he had handled the ledger card on a visit to the probation office to dispute a supervision fee.  (Tr. at 418-22.)

The respondents represent that the police recovered no other direct or physical evidence from the burglary scene linking the petitioner to the crime. (Tr. at 307-12.)

Other items stolen from the Department were excluded because the trial court ruled that they were unconstitutionally seized.  The evidence included badges, telephones, and radios found at a location disclosed by the petitioner.  (Tr. at 49-50.)  The evidence was suppressed by the trial court because the petitioner had disclosed the location in an

interview conducted after the petitioner had requested an attorney but before he had received one.  (Tr. at 50-51, 99.)

## APPLICABLE LAW

### Liberal Construction of *Pro Se* Complaint

The petitioner brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978).  *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.  *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* petition is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999).   A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

### SUMMARY JUDGMENT STANDARD OF REVIEW

The requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  *See* Fed. R. Civ. P. 56(c).  The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to

4

a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

### HABEAS STANDARD OF REVIEW

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding.

28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." 28 U.S.C.. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000) (plurality opinion). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id*. at 410.

## DISCUSSION

The petitioner raises the following grounds for relief in his *pro se* Petition for Writ of Habeas Corpus.[1]  The Court will address each in turn.

**GROUND ONE:**     The lower court erred in refusing to allow appellant to present his lawsuits against officials as evidence of bias.

**GROUND TWO:**     The lower court erred in allowing the State to cross-examine Appellant on suppressed evidence not related to Appellant's case in chief.

**GROUND THREE:**   The trial court erred in designating Appellant's 1986 second-degree burglary convictions as predicate offenses under S.C. Code §17-25-45.

**GROUND FOUR:**    Petitioner denied effective assistance of counsel, by the failure to object to admission of five (5) prior burglaries and one (1) prior grand larceny, by trial judge, and state, to prove petitioner had "two or more convictions for burglary or housebreaking."

**GROUND FIVE:**    Petitioner denied effective assistance of counsel, "by the failure to object to admission of five (5) burglary [sic] to impeach without a 609(A)(1) S.C.R.E. balancing test being conducted.

**GROUND SIX:**     Petitioner denied effective assistance of counsel by the failure to object to the insufficient limiting instructions on element of offense of "two or more prior burglary or housebreaking convictions."

**GROUND SEVEN:**   Petitioner denied effective assistance of counsel by failure to impeach key witness with two (2) prior convictions for giving false information to law enforcement.

---

[1]  The petitioner has attempted to amend and strike claims in his original petition numerous times.  The record is quite cumbersome in this regard.  Notwithstanding, the petitioner has recently and specifically clarified the grounds on which he has elected to proceed: "Thus, the petitioner is seeking to proceed on the *Habeas* petition on the original nine issues *and* the *Faretta v. California* Amended issue and to *delete* the *Brady v. Maryland* issue . . . ." [Doc. 149 (emphasis in original).]  Accordingly, there are ten grounds for relief in all.

**GROUND EIGHT:** Petitioner denied effective assistance of counsel by failure to present evidence of lawsuits against investigators by petitioner to show bias of accuser, motive to misrepresent and the facts [sic], S.C.R.E. 608(C).

**GROUND NINE:** Petitioner denied effective assistance of counsel by failure to request the court conduct a hearing on petitioner's pre-trial motion to proceed *Pro Se* which resulted in a "Structural Error" *per se* prejudicial [sic].

**FARETTA CLAIM**: Trial Court created structural error by failing to *sua sponte* conduct a hearing regarding the petitioner's informal request to proceed *pro se.*

## I.   GROUND 1

The petitioner first alleges that the trial judge erred in refusing to allow him to introduce evidence of lawsuits he had filed against law enforcement officials, to establish bias. Specifically, the plaintiff objects to the trial judge's decision not to allow him to testify on his own behalf concerning such alleged bias:

> [DEFENSE COUNSEL:] Now, do you have any concern about there being some type of bias on the part of the police against you?
>
> [Koon:] It would certainly appear that way to me.
>
> [DEFENSE COUNSEL:] Alright. Tell us have you ever filed any lawsuits against law enforcement in Cherokee County?
>
> [Koon:] Yes.
>
> [ASSISTANT SOLICITOR:] Object to irrelevance, Your Honor.
>
> [TRIAL COURT:] Sustain the objection.

(Tr. at 427.)

Outside the presence of the jury, the petitioner's counsel said he planned to introduce a number of federal lawsuits filed against law enforcement agencies and county officials alleging, among other things, unconstitutional jail conditions and cruel treatment. (Tr. at 427-30.) The petitioner testified *in camera* that he sued the Sheriff, the City of Gaffney, and the County Council for "illegal conditions at the old County Jail, the

7

overcrowding, excessive use of force. I accused them of beating people and tear gassing people." (Tr. at 429.)   The petitioner maintained that these officials were intent on prosecuting him in retaliation for the lawsuits, because he had "become a thorn in their side. And he was the easiest person to point at."  (Tr. at 427-28.)

Although the trial judge sustained the State's objection, he permitted the petitioner to question any individual police officer concerning potential bias arising from such litigation. (Tr. at 428, 431.)  The trial judge specifically stated that, while he would not permit the petitioner to "impeach the whole police force just because [the petitioner] filed suit" through his *own* testimony, the petitioner was free to impeach individual officials on cross-examination to expose any alleged bias.  (Tr. at 428.)

The petitioner's present argument before the Court is not entirely clear.  But, he seems to contend that the trial judge's refusal to allow the petitioner to testify himself concerning bias was a violation of his right to testify on his own behalf, under *Rock v. Arkansas*, 483 U.S. 44 (1987).

The respondents first submit that this allegation fails to state a claim upon which federal habeas corpus relief may be granted because it merely alleges a violation of state evidentiary law as opposed to a constitutional violation.  To the extent the plaintiff is, in fact, merely complaining about the application of state evidentiary law, the claim is barred.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law." (quotation omitted)).

In the alternative, the respondents argue that, to the extent the petitioner alleges a violation of his rights under *Rock v. Arkansas*, 483 U.S. 44 (1987), the claim is procedurally defaulted because the petitioner did not make any direct appeal of the ruling on such a basis.

The Court finds in the interest of all parties that a consideration of the petitioner's actual argument is overdue and will address it on its merits.

In *Rock v. Arkansas*, 483 U.S. 44 (1987), the Supreme Court held that a defendant's right to testify at his criminal trial, although not found in the text of the Constitution, "has sources in several provisions of the Constitution." *Id*. at 51. The Supreme Court first looked to the Due Process Clause of the Fourteenth Amendment, noting that "the right to be heard, which is so essential to due process in an adversary system of adjudication, [can] be vindicated only by affording a defendant an opportunity to testify before the factfinder." *Id*. at 51 n.8. Accordingly, *Rock* confirms the right of a criminal defendant to testify on behalf of him or herself. The Supreme Court in *Rock* also affirmed the rule that a trial court may not arbitrarily exclude material portions of a material defense witness: "Just as a State may not apply an arbitrary rule of competence to exclude a material defense witness from taking the stand, it also may not apply a rule of evidence that permits a witness to take the stand, but arbitrarily excludes material portions of his testimony." *Id*. at 55.

The precise way in which the petitioner believes his rights, as expressed in *Rock,* have been violated is not completely clear. But, because the trial judge specifically permitted the petitioner to pursue issues of bias with witnesses, the only reasonable basis for complaint would be the judge's decision to limit the petitioner's personal testimony concerning his perception of organizational bias of the police department. Accordingly, the Court will consider whether the ruling was "contrary to" the mandate in *Rock* that the plaintiff may testify on his own behalf. The Court does not interpret the petition as alleging that the state court decision's violated *Rock* by refusing to allow witnesses to offer material portions of their testimony; to the extent it does, it is without any merit because, as stated, the trial court did allow such testimony.

As an initial matter, the petitioner's right to testify on his own behalf is not unfettered. The petitioner still must "comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). In other words, *Rock* does not trump

established rules of evidence, but rather must yield to such rules when their application is reasonable.  *See, e.g., Taylor v. Illinois*, 484 U.S. 400, 410-11 (1988) ("The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on that right. The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments. . . .").

Although in the context of a Sixth Amendment "Confrontation Clause" analysis, the Fourth Circuit endorsed the following framework to determine whether the plaintiff's right to testify must yield to a state procedural rule:  courts must determine whether the rule relied upon for the exclusion of evidence is "arbitrary or disproportionate" to the "State's legitimate interests."  *Quinn v. Haynes*, 234 F.3d 837, 849 (4th Cir. 2000); *see also Rock v. Arkansas*, 483 U.S. 44, 55, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) ("[R]estrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve. In applying its evidentiary rules a State must evaluate whether the interests served by a rule justify the limitation imposed on the defendant's constitutional right to testify.").

In this case, the South Carolina Court of Appeals cited, as a justification for the exclusion of the petitioner's proffered impeachment testimony, the longstanding principle that evidence which is "so removed from the events in question . . .  has little or no probative value."  (Tr. at 767 (citing *State v. Glenn*, 492 S.E.2d 393 (S.C. Ct. App. 1997) and *State v. Bright*, 473 S.E.2d 851 (S.C. Ct. App. 1996).)  The state in this case has an interest in excluding speculative and unreliable testimony.  The petitioner, as the Court of Appeals and trial court reasoned, could not permissibly link his lawsuits to an organization-wide bias.

The trial court's application of this rule was not "arbitrary or disproportionate" to the "State's legitimate interests" in excluding unreliable evidence.  *See Quinn*, 234 F.3d at 849.

10

Critically, the trial court's ruling did not exclude the petitioner's proffered impeachment evidence of bias altogether; it merely required the petitioner show bias through cross-examination:

> You can show, when somebody testifies, you can ask them, and officer, when they testify, have you been sued by this defendant.  You can impeach them, but I don't think you can impeach the whole police force just because he's filed suit.

(Tr. at 428); s*ee also Quinn,* 234 F.3d at 850 (commending application of rule where evidence was admissible by another means).  Ironically, the petitioner argues this very fact in his response brief, insofar as he also complains that his trial counsel was ineffective for failing to elicit evidence of bias from the detectives themselves. (Pl. Resp. Summ. J. at 28.) The petitioner actually quotes from *Quinn*, in support.

The state court decisions were not contrary to the mandates of *Rock* concerning the plaintiff's right to testify.

## II.   GROUND 2

The petitioner next alleges that the trial judge erred in allowing the State to cross-examine him on suppressed evidence not related to his case-in-chief.  Specifically, the trial judge ruled that certain items, which the petitioner was accused of stealing, could not be entered into evidence because they had been improperly seized by the State.[2]  (Tr. at 50-51, 99.)  Notwithstanding, the trial judge permitted the prosecution to impeach the petitioner on cross-examination concerning those same items.

As the respondents contend, the exclusionary rule does not bar use of unconstitutionally-seized evidence to impeach a criminal defendant on cross examination. *U.S. v. Havens*, 446 U.S. 620, 627 (1980).  The United States Supreme Court has specifically held that a "defendant's statements made in response to proper

---

[2]   The evidence included badges, telephones, and radios found at a location disclosed by the petitioner. (Tr. at 49-50.)  The evidence was suppressed by the trial court because the petitioner had disclosed the location in an interview conducted after the petitioner had requested an attorney but before he had received one. (Tr. at 50-51, 99.)

11

cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the government, albeit by evidence that has been illegally obtained and that is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt." *Id.* at 627-28; *see also Harris v. New York*, 401 U.S. 222 (1971), *Walder v. United States*, 347 U.S. 62 (1954).

In their memorandum in support, the respondents claim that the petitioner "opened the door" to use of the inadmissible evidence on both direct examination and cross.   (Def. Mem. Supp. Summ. J. at 58.)  The respondents, however, have not cited to any evidence of such testimony.  Instead, they have cited to the colloquy between the judge and the attorneys, which makes no specific reference to testimony of the petitioner related to the suppressed  evidence.  *Id.* (citing Tr. at 464-65, 467-69, 473).   In fact, in that exchange, the judge expressly concluded that the subject of the cross-examination -- the stolen items -- had not been engaged on direct:

> Solicitor:   We hold, therefore, that the petitioner's credibility was appropriately impeached by use of his earlier conflicting statements.
>
> Judge:   His point is, though, in *Harris*, a petitioner testified to that on direct. *Here there's been no testimony on direct.*  You're not impeaching him.  You're setting him up to impeach him. . . .

(Tr. at 467 (emphasis added).)

Nor have the respondents cited to any place in the cross examination where the petitioner made a false statement concerning the stolen items, thereby opening the door to impeachment.  Instead, the transcript indicates that prosecution simply began asking the petitioner questions concerning the items:

> Q:   You heard Jan Pittman testify an address book was stolen from her office.   Do you remember that testimony?
> A:   Yes sir.
>
> Q:   What did you do with that address book?

12

> A:    I never had her address book.
>
> Q:    You never laid eyes on it, never seen it?
>
> A:    Never laid eyes on it.  Why would I have her address book.
>
> Q:    Now, there are some other people who testified about some walkie-talkies and handcuffs being stolen.  What did you do with that?
>
> [Objection by defense counsel followed.]

(Tr. at 462.)  The petitioner had not previously volunteered false testimony concerning the stolen items.  If he had, the respondents have not directed the Court's attention to it. Instead, the allegedly false testimony, which the prosecution was claiming to impeach under *Havens*, was given in response to the prosecution's questions themselves.  The questions did not impeach prior testimony – as far as the Court has been informed.

Notwithstanding, the trial judge overruled the objection to the attempted impeachment on the grounds that the petitioner had taken the stand and waived his right to counsel.  The trial judge reasoned that, as a result of that decision, the prosecution had a right to ask him about the inadmissible evidence, whether or not it had been implicated by responses on direct or cross.  (Tr. at 470-72.)  The trial judge concluded, "Because now he has waived all those rights.  He has waived his right to remain silent.  Once he takes the stand they are entitled to ask him everything that he knows."  (Tr. at 472.)

The Court respectfully disagrees that the questioning was permissible and finds that the trial court's and South Carolina Court of Appeals' application of *Havens* was unreasonable, in part.  *Havens* and related precedent make clear that the responses of the defendant, whether made on direct or cross and which the prosecution  seeks to impeach, must still have been "reasonably suggested by the defendant's direct examination." *Havens*, 446 U.S. at 627-28.  Here, however, the trial judge expressly concluded that the cross-examination was unrelated to any testimony made by the defendant on direct, but nevertheless allowed it.  (Tr. at 467.)  The respondents have not directed the Court to any

13

statements made by the petitioner, on direct or cross, which were allegedly false and which necessitated the use of the inadmissible evidence to contradict it.

The Supreme Court's discussion in *James v. Illinois*, 493 U.S. 307 (1990) (considering application of *Havens* to other defense witnesses) leads the Court, here, to conclude that the trial judge's application of *Havens* was unreasonably expansive:

> The previously recognized exception penalizes defendants for committing perjury by allowing the prosecution to expose their perjury through impeachment using illegally obtained evidence. Thus defendants are discouraged in the first instance from "affirmatively resort[ing] to perjurious testimony." *Walder*, *supra*, 347 U.S., at 65, 74 S.Ct., at 356. But the exception leaves defendants free to testify truthfully on their own behalf; **they can offer probative and exculpatory evidence to the jury without opening the door to impeachment by carefully avoiding any statements that directly contradict the suppressed evidence. The exception thus generally discourages perjured testimony without discouraging truthful testimony.**

*Id*. at 314 (emphasis added).  This description of the *Havens* rule seems to be most reasonable – that the defendant must have opened the door by offering perjurious testimony either on direct or cross, which all but necessitates the introduction of inadmissible evidence to expose it.   Otherwise, in every instance, the exclusionary rule could be rendered a nullity by *Havens*, where the defendant simply elects to take the stand.  Specifically, in all cases, a prosecutor, on cross examination, could put before the defendant inadmissible evidence and ask the defendant a question which would necessarily require him to either testify truthfully or to perjure himself.  This is not impeachment of perjurious testimony; it is solicitation of perjury through the introduction of inadmissible evidence.

*James* expressly states that a defendant should feel free to take the stand and offer truthful testimony, on direct or cross, unrelated to the inadmissible evidence, without fear that he will be confronted on cross with such evidence to bait him into the Hobson's choice to admit the otherwise excludable evidence or perjure himself.  *See James*, 493 U.S. at

14

314. Here there was no alleged perjury either on direct or cross, which only the inadmissible evidence could expose. Rather, the alleged perjury was created by the prosecutions use of the inadmissible evidence itself. The Court does not believe that this is the type of outcome contemplated by *Havens*.

Nevertheless, the Court believes that the petitioner cannot prevail on Ground 2, for the same reasons it was previously rejected by the South Carolina Court of Appeals. Namely, the error in the ruling, if any, amounted to no harm.

In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), "the Supreme Court held that principles of comity and respect for state court judgments preclude federal courts from granting habeas relief to state prisoners for constitutional errors committed in state court absent a showing that the error 'had a substantial and injurious effect or influence in determining the jury's verdict.'"[3]  *Richmond v. Polk*, 375 F.3d 309 (4th Cir. 2004 quoting *Brecht*) (quotation omitted)). In applying *Brecht's* harmless error analysis, the Court must "grant a habeas petition if we are in 'grave doubt' as to the harmlessness of the error. Id. at 335 (quoting *Fullwood v. Lee*, 290 F.3d 663, 679 (4th Cir.2002)). "'Grave doubt' exists when, in light of the entire record, the matter is so evenly balanced that the court feels itself in 'virtual equipose' regarding the error's harmlessness." *Id*.

In this case, neither the inadmissible evidence itself nor the circumstances leading to its discovery were ever brought out for the jury to consider. (See Tr. at 474-81.) The petitioner was certainly asked whether he had seen some of the evidence. (See Tr. at 474-

---

[3]  The Court is not sure that the *Brecht* analysis has been specifically applied to a *Havens* violation. However, the Supreme Court has recognized that "most constitutional errors can be harmless," *Neder v. United States*, 527 U.S. 1, 8 (1999), and that "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis," *id*. (quoting *Rose v. Clark*, 478 U.S. 570, 579 (1986) (alteration omitted)). *Richmond*, 375 F.3d at 334. As a result, the Court finds that it is appropriate to conduct a *Brecht* analysis to determine whether the trial court's decision to permit the cross-examination was harmless.

77 (walkie talkies, handcuffs, badges).)  Although, he admitted that he might have seen some of the evidence in photographs and denied seeing other evidence, he never admitted to having seen the evidence as a result of actually stealing the items, himself.  Moreover, the prosecution did not challenge his testimony that he had never seen the evidence (or that he had only seen it in photographs) by arguing that the inadmissible evidence had been discovered based on information provided by the petitioner.  In other words, the illegally obtained evidence was never "admitted" for impeachment purposes.  The petitioner denied both involvement in the burglary and direct knowledge of the other items (other than as shown to him in photographs).  He was not contradicted before the jury.   Accordingly, the trial court's ruling could not have had "a substantial and injurious effect or influence in determining the jury's verdict."   *Richmond* , 375 F.3d 309 (quoting *Brecht*).  They were unaware that the items had been disclosed by the petitioner and his credibility was never otherwise undermined by the examination.  The trial court's error, if any, was, therefore, harmless.

## III.    GROUND 3

The petitioner next alleges that the trial judge erred in designating the petitioner's 1986 second degree burglary convictions as predicate offenses under S.C. Code §17-25-45.  The respondents rightly submit that this allegation fails to state a claim upon which federal habeas corpus relief may be granted because the petitioner is merely complaining about a violation of state law - specifically, the state court of appeals' construction of the provisions in the recidivist statute, *see* S.C. Code §17-25-45.  As previously stated, federal habeas corpus relief is not available to correct errors of state law. *See Estelle*, 502 U.S. at 67-68 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (citation omitted)).

16

The petition is based solely on state-law arguments (Pet. at 13-15) and the petitioner, in his response brief, has not explained how the issue is a federal one. Accordingly, the claim should be dismissed.

## IV.    GROUND 4[4]

In Ground Four, the petitioner alleges that he received ineffective assistance of counsel because trial counsel did not "object to admission of five (5) prior burglaries and one (1) prior grand larceny, to prove petitioner had 'two or more convictions for burglary or housebreaking.'"   (Pet. at 16.)

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, the petitioner "must show that counsel's performance was deficient."   *Id.* at 687.  To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness."   *Id.* at 688.   Second, the petitioner must show that the deficient performance actually prejudiced him.    Review of counsel's performance is "highly deferential."  *Id.* at 689. In addition, competency is measured against what an objectively reasonable attorney would have done under the circumstances.   *See id.* at 687-89. Counsel are afforded a strong presumption that their performance was within the broad range of professionally competent assistance.   *See id*. at 689.   Courts are reluctant to second guess the trial tactics of lawyers.   Where counsel articulates valid reasons for employing certain strategy, such conduct will not be deemed ineffective assistance of counsel.   *See Daniels v. Lee*, 316 F.3d 477, 491 (4th Cir. 2003); *Stokes v. State*, 419 S.E.2d 778, 779 (S.C. 1992).

---

[4] The respondents originally argued that grounds four through nine must fail as they were procedurally defaulted.  The respondents represented that the South Carolina Supreme Court had not considered those arguments on the merits.  A subsequent Order of the South Carolina Supreme Court, however, has made it clear that those arguments were in fact denied after a consideration of their merits.  (Resp. Supp. Return and Mem. Supp. Summ. J. at 4, Ex. 1 (Order, dated March 1, 2006).)

17

First, it appears that trial counsel unequivocally did object to admission of the prior convictions. (Tr. at 149 ("We would ask for a preliminary ruling from the bench on whether you would allow the state to impeach him based on those convictions.").) The trial court denied that motion. (Tr. at 150.)

Moreover, the petitioner's trial counsel testified at the PCR hearing that, anticipating such a ruling from the trial court, he had planned as a part of the trial strategy to admit that the petitioner had a prior record. (Tr. at 829-832.) Specifically, trial counsel explained that there were certain facts in the case that only the petitioner could explain. (Tr. at 829.) As a result, the petitioner was going to have to testify. *Id*. Accordingly, trial counsel believed that the convictions were likely to come in either because the petitioner's testimony might implicate prior criminal activity[5] or simply because the State was required to prove prior convictions as an element of the offense, making the priors relevant. (Tr. at 830-31.) In fact, that is exactly what occurred. (Tr. at 150, 831 ("[T]he judge had ruled that they were gonna be allowed to impeach him on these prior convictions at that point.").)[6]

Trial counsel summarized the strategy as follows, "There was just a lot of criminal convictions, a lot of criminal activity that was gonna show up attached to him and we thought that the best way to deal with it was up front and early if we were gonna have to take that tact of him taking the stand." (Tr. at 831.) In short, trial counsel wanted to avoid looking like the petitioner was "hiding something." (Tr. at 832.) The petitioner's "credibility was important." *Id*.

---

[5] For example, the petitioner was going to explain his fingerprint on a ledger card by testifying that he had handled the card while visiting in the probation office, while on probation. (Tr. at 831.) Of course, the fact that the petitioner was in a probation office necessarily raises questions for the jury concerning prior criminal activity. *Id*.

[6] This fact eliminates the petitioner's argument that his trial counsel should have at least argued that only 2 of the 6 prior convictions could be admitted (to prove that element of the statute – two prior convictions). The judge ruled that they were all admissible.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options *are virtually unchallengeable*; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91 (emphasis added). In order to prevail on his claim, the petitioner must overcome the strong presumption that, "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689. The petitioner has failed to rebut his trial counsel's testimony that his decision to allow evidence of the prior convictions was part of the trial strategy. He has similarly failed to show that this strategy was objectively unreasonable.

It seems likely that regardless of the strategy adopted, the trial court was going to allow the jury to hear about the prior convictions. It was certainly, one, among numerous reasonable strategies, available to co-opt the potential negative effect of those convictions -- to deal with them in the affirmative. Although the petitioner submits various rationale for not admitting the convictions, his justifications for a different strategy are of no moment. They do not prove that the trial strategy actually employed was unreasonable or that trial counsel's investigation of the law and facts leading to that strategy was deficient. His argument is simply one for a different, but no more reasonable, approach. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689.

## V.    GROUND 5

The petitioner further contends that his counsel was ineffective insofar as he failed to object to the admission of five prior burglary convictions for impeachment purposes and to demand that a S.C. R. Evid. 609(A)(1) balancing test be performed. As already stated, trial counsel did make a motion to exclude evidence of the convictions. (Tr. at 149.) And,

19

although Rule 609(A)(1) was not specifically recited, the precise grounds argued by trial counsel was the prejudicial effect of such evidence: "I think there is an overwhelming tendency on the part of folks to assume, if there is evidence of a prior conviction, to use it in an improper fashion." *Id.* Accordingly, the elements of the 609(A)(1) balancing test were before the trial court and the trial court found that the evidence of prior convictions was more probative than prejudicial, necessarily.[7] (See Tr. at 150.) Ground five gives the petitioner no bases for relief.[8] His counsel was not ineffective in this regard.

## VI.    GROUND 6

Ground six alleges that the petitioner's trial counsel was ineffective for his failure to object to the limiting instructions related to the element of the alleged offense that the petitioner must have "two or more prior convictions for burglary or housebreaking." The petitioner represents that the instruction given read as follows:

> To the extent that the state relies on the record of the prior burglaries of Mr. Koon you cannot and must not consider these prior convictions in determining if Mr. Koon is guilty of this particular burglary with which he is charged. The fact that any prior conviction can be and must be considered by you in determining whether Mr. Koon might be guilty of second degree burglary.

(Pet. at 26.) The petitioner complains that the instruction is vague, confusing, and does not properly caution the jury regarding the proper evidentiary value of the prior convictions. (Pet. at 25-26.)

---

[7] The petitioner claims that the trial court simply conducted a S.C. R. Evid. 609(b) analysis by concluding that the prosecution could impeach the petitioner with convictions arising within a ten year period of time. As stated, however, trial counsel argued to the trial court the prejudicial effect of the prior convictions. The Court, therefore, assumes that the trial court implicitly balanced the relative probative value and prejudicial effect. But, even assuming the trial judge did not, it is no error on the part of the petitioner's counsel. Trial counsel unequivocally advanced the argument that the petitioner now accuses him of failing to make – that evidence of identical offenses will simply be too prejudicial. (Tr. at 149.)

[8] In his petition, the petitioner also complains that a contemporaneous objection was not made to the evidence as it was presented. There did not appear to be any preservation of error issues, however, on appeal or in PCR. Accordingly, the allegation is not relevant.

The respondents seem to believe that the petitioner is contending that the "nighttime" element of the offense was not charged and that it was failure of his counsel to not object. (Resp. Supplemental Mem. Summ. J. at 12.) Although that argument appears to have been one of many before the PCR court concerning the jury instructions at his trial (Tr. at 952 (concerning ruling of PCR court that counsel was not ineffective for failing to request that nighttime element be charged)), it is not the argument before this Court. The Court cannot be certain, as a consequence of the petitioner's substantial filings at the state court level, but it does not appear that the argument presently before this Court was ever specifically raised, either on direct appeal or in collateral proceedings. The issue, therefore, is likely procedurally defaulted.

Regardless, the petitioner cannot meet his burden under *Strickland* to demonstrate prejudice. The petitioner has alleged that the instruction could have been clearer in a variety of ways: it should have (1) specifically stated that the prior convictions were only to be used to prove the element of the offense; (2) been contemporaneously given with the actual admission of evidence of the convictions; (3) cautioned the jury not to use the convictions as evidence of bad character; and (4) cautioned the jury not to consider the prior convictions as evidence of a propensity to commit similar crimes.

Although the instruction could have been more detailed, the Court is unaware of any basis to conclude that trial counsel's "representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. But, more importantly, the petitioner cannot point to any prejudice as a result of such failure on the part of his counsel, if any.

A showing of prejudice requires the petitioner to prove that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687; *see also Glover v. Miro*, 262 F.3d 268 (4th Cir. 2001). Absent narrow circumstances not present here, when prejudice may be presumed, *United States v. Cronic*, 466 U.S. 648 (1984), the petitioner must show actual prejudice under *Strickland*. *See Strickland*, 466

U.S. at 692. Actual prejudice requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Whatever deficiency exists in the jury instruction is slight and certainly does not undermine confidence in the outcome of the decision. It is the petitioner's burden to demonstrate otherwise. He has not even attempted to do so. The respondents have recounted substantial other evidence of the petitioner's guilt and the petitioner has not demonstrated a reasonable probability that the outcome would have been different with a more detailed instruction.

## VII.  GROUND 7

The petitioner next argues that trial counsel was ineffective for his failure to impeach Jerry Sutherland, a key prosecution witness and friend of the petitioner, with two prior convictions for giving false information to law enforcement. The prosecution called Sutherland to testify that the petitioner had offered to sell him the gun that was allegedly stolen from the police department. (Tr. at 854.) The Court finds that genuine issues of fact exist as to this ground and whether the PCR court made reasonable application of *Strickland*.

The respondents contend that the petitioner's trial counsel again made a strategic decision to position Sutherland as a friend of the petitioner's but a chronic drunk who was intoxicated on the day the petitioner allegedly offered him the stolen gun. Review of trial counsel's testimony suggests that this seems to be only part of the truth.

It is true that trial counsel recalled planning to use Sutherland's drunkenness as the primary strategy for discrediting his testimony. (Tr. at 855-56.) Sutherland and the petitioner were long time friends and it was originally thought that he would offer testimony favorable to the petitioner. (Tr. at 854.) But, by the time of trial, it was obvious that

Sutherland would be offering testimony harmful to the petitioner.  *Id*.  Notwithstanding, Sutherland's prior convictions were not used to impeach him and trial counsel repeatedly admitted, at the PCR hearing, that he does not recall his reasons for failing to do so:

> "Well, I'm not sure what – I, I don't remember, off the top of my head, what we were trying to accomplish with Mr. Sutherland." (Tr. at 855.)

> "Well, Mr. Thompson, I don't recall specifically why I didn't use it."  (Tr at 856.)

> "I mean it's certainly, and if you've got instances where somebody has lied to the police, that's a very damning conviction.  I agree with you there.  I don't remember why we didn't use it." (Tr. at 857.)

Accordingly, it cannot be said that the decision concerning the prior convictions was part of some specific trial strategy, worthy of deference by the Court.  Although trial counsel articulated a partial strategy for attacking Sutherland's drunkenness, it is not a strategy that seems to reflect consideration of whether the prior convictions should be used one way or the other.  And to the same extent that trial counsel cannot recall why he would have elected not to so impeach Sutherland, the Court is at an equal loss as to why that would not have been a reasonable part of the strategy.  Trial counsel admits, as quoted above, that such impeachment evidence was "very damning."  (Tr. at 857.)  The testimony was central to the prosecution's case, linking the stolen weapon to the petitioner.  (Tr. at 856.)  And, Sutherland had proved no longer to be allied with the petitioner.  By the time of Sutherland's damaging testimony, it would appear of very little value to the petitioner to continue to treat Sutherland as a friend who was simply too drunk to recall the events correctly.  Surely a friend would concede as much if it were true and couch his testimony accordingly.  Instead, trial counsel permitted Sutherland to testify adversely against his client uncontested, knowing that Sutherland could be substantially discredited by convictions of two other occasions where he had given false information to the police.  The unreasonableness of failing to so impeach seems nearly inescapable.  The thin analysis of the PCR court in its

23

decision denying relief on this same ground, seems to betray that fact; the Court finds that analysis an unreasonable application of *Strickland*.[9]  (Tr. at 954-55.)

What is not fully clear to the Court and for which genuine issues remain, is whether the failure to properly impeach Sutherland amounted to prejudice sufficient to undermine the credibility of the proceedings.  Sutherland's testimony is clearly central to the case against the petitioner.  By the testimony of the petitioner's own trial counsel, Sutherland was the only person to link the petitioner to the stolen gun:

> Q: And as you've earlier admitted, it was his [Sutherland's] testimony that linked Mr. Koon to the pistol?
>
> A: That's correct, yes.
>
> Q: He was the only witness called in that regard, is that correct?
>
> A: Well, I certainly don't disagree with you.

(Tr. at 856.)  Moreover, it is undisputed that the prior convictions could have been highly effective in impeaching Sutherland's credibility on this central part of the prosecution's case. (Tr. at 857.)   As stated, trial counsel admitted at the PCR hearing, "I mean it's certainly, and if you've got instances where somebody has lied to the police, that's a very damning conviction.  I agree with you there."  (Tr. at 857.)

It appears to the Court that the only other stolen item, admitted into evidence,[10] which would have the effect of linking the petitioner to the burglary, was the ledger card. As described earlier, the petitioner explained that the fingerprint on the ledger card was attributable to a visit he had to the probation office, during which he had handled the card.

---

[9]  The PCR court summarily concluded that trial counsel's testimony concerning his strategy was credible and that the petitioner had failed to meet his burden on either prong of *Strickland*.  The application of *Strickland* is unreasonable because, as will be discussed, the PCR court's decision reflects no consideration of how critical Sutherland's testimony was to the case or how persuasive the unused impeachment evidence could have been in deconstructing that testimony.

[10]  As previously discussed, all of the other stolen items were excluded as having been unconstitutionally seized.

(Tr. at 418-22.)  For the volume of the record and the briefing, the Court is not sure if there were other stolen items linked to the petitioner at trial but the undersigned does not believe so.   (See Pet. at 32 (claiming that ledger card and gun were the only two pieces of evidence; Resp. Mem. Summ. J. at 44-45 (referring only to evidence of the ledger card and gun).)  It appears that the respondents admit that the police recovered no other direct or physical evidence from the burglary scene linking the petitioner to it (Tr. at 307-12).  (Resp. Mem. Supp. Summ. J. at 45.)

It seems likely that as between the two pieces of evidence, the ledger card and the gun, the gun would have been more compelling to the jury.  The petitioner's only alibi concerning the gun was that he had been given it at a pool hall.  (Tr. at 422-26.)  But clearly, different than the ledger card, it was the only item stolen from the Department, which was actually found in the petitioner's possession outside of the office.  The fingerprint on the ledger card could not, of itself, suggest the same concerning the petitioner's physical possession of it.

Accordingly, if Sutherland's testimony concerning the petitioner's possession of the gun had been substantially undermined it would seem a jury might have been able to entertain a very different result.  And, it would appear to the Court that evidence that Sutherland had previously, and on more than one occasion, lied to police would be far more damaging than whatever doubt could be cast upon his testimony for allegations of mere drunkenness.

To the Court, therefore, genuine issues of fact remain as to whether the PCR court's summary conclusion that the petitioner was not prejudiced by the failure to impeach Sutherland was an unreasonable application of *Strickland*.

## VIII.    GROUND 8

The petitioner's eighth basis for relief is that his counsel was ineffective for his alleged failure to impeach detectives Chris Skinner, Seqina, and Jimmy Hinson with

evidence of their bias as a result of lawsuits filed by the petitioner against them.  It is beyond debate, however, that trial counsel attempted numerous times to present evidence of the alleged bias of these witnesses related to lawsuits brought by the petitioner.  (Tr. at 427-31; 494-95.)  Detailed proffers were made to that end.  *Id.*   Strangely, the petitioner admits all of these efforts but still complains as to some deficiency on the part of his trial counsel.  (Pet. at 33, 36.)

The petitioner seems to allege that trial counsel's failure lies in not submitting documentation related to the lawsuits.  But the Court does not see how.  First, the petitioner testified generally as to the substance of the lawsuits and their relevancy.  (Tr. at 427-31.)  Second, trial counsel's efforts were reasonable and diligent under the circumstances and not submitting documentation of the lawsuits cannot alter that fact.  Trial counsel attempted to admit the evidence, gave a proffer when the evidence was excluded, and again tried later to argue for use of the evidence (Tr. at 494-95).  His efforts do not fall below the standard established in *Strickland*, with or without documentation.

## IX.    GROUND 9 AND *FARETTA* CLAIM

Lastly, the petitioner has pled two claims based upon *Faretta v. California*, 422 U.S. 806 (1975).   In *Faretta*, the Supreme Court first recognized a defendant's right to self-representation at trial, in state court.   *See id.* at 834.   *Faretta* found that right guaranteed to state criminal defendants by the Sixth and Fourteenth amendments of the United States Constitution.  *Id*.  But, since it is more likely than not that a defendant would fare better with the assistance of counsel, the Supreme Court held that a defendant will only be permitted to represent himself when he "knowingly and intelligently" relinquishes his right to counsel.  *Id*. at 835.  Such a knowing waiver must be made by a "clear and unequivocal" assertion of the right to self-representation.  *Id*.  Once there is a clear assertion of that right, the court must conduct a hearing to ensure that the defendant is fully aware of the dangers and disadvantages of proceeding without counsel.  *See Buhl v. Cooksey,* 233 F.3d 783,

791, 794 (3rd Cir. 2000) ("Once Buhl properly asserted his right to proceed *pro se* the trial court was *obligated* to undertake an appropriate inquiry under Faretta even though Buhl's request apparently rested upon nothing other than dissatisfaction with defense counsel." (emphasis added))*; Hance v. Zant*, 696 F.2d 940, 949 (11th Cir. 1983).

By way of background, the record demonstrates that the petitioner sent the trial judge a letter asserting his rights under *Faretta*: "I am asserting my rights under *Faretta v. California* to represent my-self [sic], to insure that matters raised in this letter and other matters are raised at my trial." [Doc. 153 Part 6.]  That letter was received by the trial judge and forwarded to the petitioner's trial counsel, with the following instructions:  "If there needs to be a hearing with Mr. Koon or you just need to speak with Judge Hayes about this letter, please don't hesitate to call our office."  *Id*.  It is undisputed that no hearing was ever had on the matter and that the trial court never addressed the petitioner's request to proceed *pro se*.

While the petitioner spends substantial energy attempting to prove that he in fact made a request to proceed *pro se* prior to trial and that his trial counsel was aware of such a request, it appears to the Court that those facts are indisputable.  [Doc. 153, Part 4 at 7-10.]  The respondents essentially concede as much.  (Resp. Supplemental Mem. Summ. J. at 5.)

The plaintiff's first *Faretta* claim, pled in his original petition, is one for ineffective assistance of counsel.  Specifically, the petitioner contends that his trial counsel was ineffective for a failure to request that the trial court conduct a hearing on the petitioner's pre-trial motion to proceed *pro se*.  The petitioner's second *Faretta* claim is a contention that the trial court itself created structural error in the proceedings by not conducting, *sua sponte*, a hearing to consider the petitioner's informal request to proceed *pro se* pursuant to *Faretta*.  The two types of claims, although based on the same right of the petitioner, are

analyzed differently and the difference is potentially material.  The Court will address each in turn.

### A.    Ineffective Assistance of Counsel

Although not thorough, the PCR court's analysis of the petitioner's ineffective assistance-*Faretta* claim did not involve an unreasonable application of Strickland.  The PCR Court summarily determined that "[t]he applicant did not carry his burden to show that an objection to something that did not occur at trial amounted to deficient representation." (Tr. at 947.)  The PCR Court gave no other explanation for why it was able to conclude that trial counsel's performance did not fall "below the standard of professional reasonableness for a criminal defense attorney. . . ." (Tr. at 948.)  It is not entirely clear what the PCR Court meant by the phrase "an objection to something that did not occur at trial." *Id*.  The Court assumes it was referring to the fact that no specific motion to proceed *pro se* was ever made at trial, about which trial counsel could have ever been deficient.  Of course, that is the petitioner's entire point - his trial counsel made no motion whatsoever nor attempted to renew the request already made by the petitioner directly to the trial court.

If trial counsel had any explanation for why he did not pursue the motion or renew it, then the entire breadth of the petitioner's *Faretta* allegations would be impotent.  But, trial counsel has offered very little explanation.  Trial counsel testified that, while he is confident that he discussed the matter with the petitioner, he does not specifically recall why the motion was not raised before the Court.  [Doc. 153 Part 4 at 18-21.]   In a letter to the petitioner, trial counsel states: "I have no recollection of why your motion to proceed pro se was not heard." [Doc. 153 Part 6.]

There is no debate that trial counsel knew or should have known, prior to trial, that the petitioner had made a request to proceed *pro se.*  [Doc. 153, Part 4 at 7-10.]  The trial court had expressly placed the responsibility of pursuing that motion on trial counsel.  [Doc. 153, Part 6.]  No motion for a *Faretta* hearing was ever pursued by counsel.  But, in the

same moment, the petitioner does not allege that he asked trial counsel to pursue the request and that trial counsel refused.  If he had, certainly the petitioner would so claim.

Accordingly, the only evidence of record is trial counsel's representation that they discussed it.  As will be discussed, the petitioner's subsequent conduct points to only one conclusion – that he decided to abandon the request to proceed pro se.  While the Court would prefer greater detail as to trial counsel's efforts in this regard, the petitioner has not produced any evidence or allegations that trial counsel's actions fell below the standard set forth in *Strickland*.

But even if the petitioner could demonstrate that trial counsel's efforts were ineffective, he faces the formidable task of showing prejudice that has resulted from the alleged failing of his trial counsel.  As an initial matter, the petitioner contends that no such showing is required because a *Faretta* violation is a structural error which creates prejudice *per se.*  The petitioner is correct that normally a denial of a defendant's *Faretta* right to proceed *pro se* is a structural error for which no showing of prejudice is required.  *See McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984).  But where a *Faretta* claim is made as one for ineffective assistance of counsel, the petitioner still must make a showing of prejudice under the second prong of *Strickland*.  *See Washington v. Renico*, 455 F.3d 722, 734 (6th Cir. 2006) (holding that if the petitioner frames the habeas ground as one for ineffective assistance of counsel he is still required to demonstrate that his counsel's error was prejudicial under *Strickland*, 466 U.S. at 691); *Orazio v. Dugger*, 876 F.2d 1508, 1513 (11th Cir. 1989).  The petitioner has clearly and consistently pled a claim for ineffective assistance of counsel based on *Faretta*.[11]  (*See* Tr. at 776-803 (PCR application), 944-61

---

[11]  The Court did not interpret the petitioner's state appeals and PCR applications as including any *Faretta*-based claim other than one for ineffective assistance of counsel.  In fact, the PCR court only considered the petitioner's *Faretta* allegations in that context. [Tr. at 946.]  But, the South Carolina Supreme Court has expressly ruled that the petitioner made a *Faretta* claim based specifically on trial court error and that it denied certiorari based on the merits, or lack thereof, of that claim.  [Doc. 149 Part 1.]  Otherwise, this Court would have found such a claim procedurally defaulted.  As it stands, both *Faretta* claims are

(PCR ruling)); (Resp. Mem. Supp. Summ. J. at 29 (issues in petition for writ of certiorari from PCR ruling); (Pet. at 37-38.) He may not simply claim structural error *per se*, when the claim is framed as one for ineffective assistance of counsel, as the petitioner has done here. So the PCR court was not in error to consider the prejudice prong of *Strickland*.

The PCR court seemed to base its conclusion that the petitioner could not show prejudice based on the following considerations. First, the petitioner has admitted that trial counsel represented him well (Tr. at 367). (Tr. at 946.) Second, the petitioner presented no credible evidence to support his contention that he was actually prejudiced. (Tr. at 947.) Lastly, the PCR Court emphasized that the trial court permitted the petitioner to make various arguments on his own behalf at the end of trial. *Id*.

This explanation is immanently reasonable. The courts repeatedly recognized, what is express in *Faretta*, that "it is more likely than not that a defendant would fare better with the assistance of counsel." *Raulerson v. Wainwright*, 732 F.2d 803, 808 (11th Cir. 1984); *see Faretta*, 422 U.S. at 835. In fact, it is said that the colloquial presumption is that "one who represents himself has a fool for a lawyer." To that end, "the accused must knowingly and intelligently forgo those relinquished *benefits* [of retained counsel]" before he can represent himself *pro se*. *Faretta*, 422 U.S. at 835 (emphasis added). Accordingly, it is presumed that the defendant is not prejudiced by the presence of counsel in a way greater than had he no counsel at all.

The petitioner cannot rebut that presumption and show any prejudice, under *Strickland*, resulting from trial counsel's alleged failure to pursue the motion. First, the petitioner has conceded that trial counsel represented him well. (Tr. at 367.) Second, the petitioner has not produced any evidence or otherwise demonstrated that he would have performed in a way so superior to his counsel that the results would have been different or that the credibility of the proceeding was undermined. *See Strickland*, 466 U.S. at 694.

───────────────────

properly before the Court.

There is no reason to believe that the petitioner would have outperformed trained counsel in the defense of his case to an extent that he would have been better off without him.

### B.    *Faretta* Claim

The petitioner's second *Faretta*-based claim is a pure one.  By "pure," the Court simply means to say that the petitioner also alleges that, in addition to the alleged failings of his counsel, the trial court, itself, erroneously refused to allow the defendant to proceed *pro se.*  As stated, the petitioner need not make any specific showing of prejudice to prevail. *See McKaskle*, 465 U.S. at 177 n.8.   Instead, he must demonstrate that he (1) asserted his rights under *Faretta*; (2) that such an assertion amounted to a knowing and voluntary waiver of his right to counsel; and (3) that he did not later revoke or waive the *Faretta* right previously asserted.   *See Dorman v. Wainwright*, 798 F.2d 1358, 1366 (11th Cir. 1986); *Moore v. Haviland*, 476 F. Supp. 2d 768, 776 (N.D. Ohio 2007) (summation of analysis).

The petitioner unquestionably asserted his rights under *Faretta* in the letter to the trial court.  A defendant need not "recite some talismanic formula hoping to open the eyes and ears of the court to his request" to invoke his/her Sixth Amendment rights under *Faretta*. *Dorman*, 798 F.2d at 1366.  "[T]the law simply requires an affirmative, unequivocal, request, and does not require that request to be written or in the form of a formal motion filed with the court."   *Buhl,* 233 F.3d at 792.   A number of cases have involved letters, from represented defendants sent directly to the trial court, asserting *Faretta* rights.   *See, e.g., Dorman*, 798 F.2d at 1360-61, 1366-67; *Raulerson*, 732 F.2d at 808-09.  In fact, in *Farretta* itself, the petitioner asserted his right to proceed *pro se* to the trial judge, directly, weeks before the trial.  *Faretta*, 422 U.S. at 835.  The Court, therefore, finds that the petitioner asserted his *Faretta* right to proceed *pro se* in his letter.

As stated, once the petitioner asserted his *Faretta* right, the trial court was required to conduct a hearing.  *See Buhl*, 233 F.3d at 791, 794 ("Once Buhl properly asserted his right to proceed *pro se* the trial court was *obligated* to undertake an appropriate inquiry

under Faretta even though Buhl's request apparently rested upon nothing other than dissatisfaction with defense counsel." (emphasis added))*; Hance*, 696 F.2d at 949.  At the hearing, the defendant must "'voluntarily and intelligently'" elect to conduct his own defense. *Faretta*, 422 U.S. at 835; *see also U.S. v. Singleton*, 107 F.3d 1091, 1097 (4th Cir. 1997). Further, the trial court must make the defendant "aware of the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835.  In *Faretta*, in response to the petitioner's direct request, the trial judge conducted a *sua sponte* hearing to ascertain Faretta's ability to conduct his own defense, as the petitioner argues the trial court should have done here. *See Faretta*, 422 U.S. at 808.  In this case, it is undisputed that no hearing was ever conducted to determine whether the petitioner had made a voluntary and knowing waiver of his right to counsel.

Instead, the trial court put the onus on counsel to renew the motion already made by the petitioner.  The Court does not believe that such a decision relieved the trial court of its obligation to conduct a hearing after the petitioner's clear assertion of his right to proceed *pro se*, under *Faretta.*  But, because petitioner, neither on his own behalf nor through counsel, ever re-raised the status of his request to the court, an issue arises as to whether the petitioner waived or abandoned his previously asserted right under *Faretta*, implicitly.

While a number of courts have addressed the waiver of a previously asserted *Faretta* right  through subsequent conduct, the United States Supreme Court has never made a specific pronouncement on the issue.  *See U.S. v. Singleton*, 107 F.3d 1091 (4th Cir. 1997) ("But no Supreme Court case has discussed in any detail the requirements for a waiver of the right to self-representation.").  Although the United States Supreme Court has never dealt with the issue squarely, in a case dealing with the interplay between appointed stand-by counsel and a *pro se* defendant, the Court has stated, "Once a *pro se* defendant invites or agrees to any substantial participation by counsel, *subsequent appearances by counsel*

*must be presumed to be with the defendant's acquiescence*, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (emphasis added).     Even more affirmatively the Supreme Court stated:

> A defendant can waive his *Faretta* rights. Participation by counsel with a *pro se* defendant's express approval is, of course, constitutionally unobjectionable. *A defendant's invitation to counsel to participate in the trial obliterates any claim that the participation in question deprived the defendant of control over his own defense.*

*Id*. at 182 (emphasis added).

These comments are highly suggestive of how the Supreme Court might resolve the present issue but are likely not fully dispositive.  Specifically, *McKaskle* concerned a *pro se* defendant whose actions at trial implied his consent to various manner of participation by court-appointed, standby counsel.  There, the defendant frequently changed his mind regarding the standby counsel's role, objecting to counsel's participation on some occasions but agreeing to it on other occasions.  *Id.*  In *McKaskle*, therefore, the defendant gave express approval – on at least some occasion – of the participation by counsel.  *See id.* ("[B]ut shortly thereafter he expressly agreed that counsel should question a witness on voir dire.") Thus, by extension, it was reasonable for the Supreme Court to conclude that those instances of participation by counsel, which went unobjected to, also carried the defendant's implicit consent because the defendant had demonstrated his ability and intent to effectively object to such participation when he did not consent and on some occasions to expressly request such participation by counsel.

In the present case, however, the only express statement of the petitioner's intent to use or not use counsel was his letter to the judge stating that he wanted to proceed *pro se*.  That letter was the petitioner's last formal expression of intent regarding counsel.  That intent was not vetted by the trial court and trial counsel cannot explain fully why that intent might have changed.  The only evidence of waiver is the petitioner's uncontested and

continued usage of trial counsel, generally. The Court finds this distinction, though subtle, material enough to render *McKaskle* not completely controlling.

The Fourth Circuit has also made relevant pronouncements on the issue, generally, although not in any case dealing with an implicit waiver. In *U.S. v. Singleton*, the Fourth Circuit said that "[a]s with the right to counsel, a defendant may waive his right to self-representation." *Singleton*, 107 F.3d at1096. The court stated further that "[b]ecause of the legal preeminence of the right to representation by counsel and the need to maintain judicial order, we have held that while the right to counsel may be waived only expressly, knowingly, and intelligently, '**the right to self-representation can be waived** by failure timely to assert it, or **by subsequent conduct giving the appearance of uncertainty**.'"[12] *Id*. (citing *United States v. Gillis*, 773 F.2d 549, 559 (4th Cir.1985)) (emphasis added). Accordingly, it appears that the Fourth Circuit would agree that a previously asserted *Faretta* right could be implicitly waived by a defendant who engages in conduct inconsistent with the prior assertion, even in the absence of any formal hearing to determine that the defendant has knowingly waived that previously asserted right.

Finally, other circuit courts of appeal have expressly found that a defendant's continued use of counsel waives a previously asserted right under *Faretta*. *See, e.g., Raulerson v. Wainwright*, 732 F.2d 803, 808 (11th Cir. 1984) ("On that date, he did make known his desire to appear pro se but then waived it by voluntarily leaving the courtroom during the Faretta inquiry."); *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir.1982) ("A waiver may be found if it reasonably appears to the court that defendant has abandoned his initial request to represent himself. . . . Defendant concedes that at some point after the

---

[12] Beyond these pronouncements, *Singleton* is not of any further help because the court was not considering an implicit waiver of a previously asserted *Faretta* right in that case. In *Singleton*, the defendant had abruptly presented a mid-trial request to fire counsel.

34

hearing on the motion to withdraw he asked counsel to continue his representation."); *United States v. Montgomery*, 529 F.2d 1404, 1406 (10th Cir. 1976) (finding that defendant waived the right to proceed *pro se* when he allowed the public defender to conduct plea bargaining on his behalf, accepted the benefits of the plea bargaining by pleading guilty to a lesser offense, and otherwise knowingly and voluntarily dropped the *pro se* demand).    Again, these cases include some factual and procedural distinctions not plumb with this case.  But they are a strong indication as to how the Fourth Circuit and ultimately the Supreme Court would treat the present case.

The petitioner, in this case, after initially asserting his *Faretta* right directly to the judge, proceeded to try his entire case represented by counsel.  Once at trial, the petitioner never attempted to indicate to the trial judge that he still wished to proceed *pro se.* Although he argues that  he personally attempted to renew his request to proceed *pro se* at trial and that the trial judge asked the petitioner to speak only through his counsel, a review of the cited record shows that the petitioner was attempting to address the court in regards to its ruling concerning the admissibility of certain evidence.  (See Tr. at 95.)  The petitioner has not identified any other place in the record where he personally attempted to request to proceed *pro se* at trial and was cut short.

Even if the petitioner was told to speak through counsel specifically regarding his *Faretta* rights, the petitioner has not alleged or produced any evidence that he, in fact, requested trial counsel to do so and that trial counsel refused.  The petitioner does not even allege as much.  Trial counsel has testified that, while he does not specifically recall why the motion was not raised before the Court, he is confident that he discussed the matter with the petitioner. [Doc. 153 Ex. 3 at 18-21.]    Surely, if trial counsel had refused such a request of the petitioner, then petitioner would now be alleging as much and would have likely complained to the trial court.

The Eleventh Circuit has stated that "[a]lthough a defendant need not 'continually renew his request to represent himself even after it is conclusively denied by the trial judge,' he must pursue the matter diligently." *Raulerson*, 732 F.2d at 809 (citation omitted).  While the Court believes that the trial court should have immediately conducted a *Faretta* hearing, the petitioner had numerous opportunities to reassert his rights.  On the record of this case, it cannot be said that he acted diligently in defense of his *Faretta* right.  In fact, his conduct at trial implied strongly a desire to abandon that previously asserted right.

The petitioner complains that a "silent" record, as to his intent, cannot be interpreted as a waiver.  As stated, however, most jurisdictions, have concluded differently, including the Fourth Circuit.  The petitioner's use of counsel throughout trial was inconsistent with a desire to proceed *pro se*.  While the Court appreciates the intimidation of trial, there is no evidence that the petitioner, under the duress of trial, was rendered incapable of being diligent as to his rights either on his own or through his counsel.

The state courts' treatment of this issue was not contrary to *Faretta*.

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondents' motion for summary judgment be GRANTED, in part, and DENIED, in part.  Specifically, Grounds 1-6, 8, 9, and the amended *Faretta* claim should be dismissed.  Genuine issues of fact remain as to Ground 7.

s/Bruce H. Hendricks
United States Magistrate Judge

August 7, 2007
Greenville, South Carolina